# THE STATE ex rel. HILL, Collector, Appellant, v. WABASH RAILROAD COMPANY.

### Division Two, October 17, 1902.

1. **Motion for New Trial:** SAVING EXCEPTIONS. Exceptions to the action of the court in overruling the motions for a new trial and in arrest are properly saved if the bill of exceptions shows such exceptions were saved, whether the record proper contains a recital concerning the saving of such exceptions or not. The bill of exceptions is the proper repository of exceptions to the overruling of the motion for a new trial.

2. **Suit for Taxes:** PROPER PLAINTIFF. All state and county taxes under the Missouri statute can be sued for only in the name of the State at the relation of and to the use of the collector of the county. And the suit should be so brought although the purpose thereof is to collect taxes levied to pay warrants that have been purchased by private persons from the persons to whom the county issued them.

3. **Taxation:** RATE FOR COUNTY PURPOSES: NO VOTE. A tax in excess of forty cents on the hundred dollars for county purposes, in counties the assessed valuation of whose property is between six and ten million dollars, can not be levied, unless such levy be authorized by the assent of two-thirds of the voters of the county voting at an election to be held for that purpose. And this is the meaning of the Constitution, whether the indebtedness·for which the excessive levy is made was incurred for current expenses or for jail or courthouse or any other purpose mentioned in the last lines of section 12, article 10, Constitution of Missouri.

4. ———: ———: VALIDITY OF WARRANTS. Warrants issued by a county court to pay current expenses may be valid, yet a tax levied to pay them, in excess of the constitutional limitation, may be invalid.

5. ———: ———: UNCOLLECTED LEVY AS LIMITATION. A levy of taxes in excess of the limit fixed by the Constitution, to pay warrants issued for current county expenses, can not be justified by the fact that, if all the taxes assessed and levied for those years had been collected, the amount of such taxes, together with the other revenue and income actually collected, would have .exceeded the amount of warrants issued for such years.

6. ———: ———: PROCEEDINGS UNDER SECTION 7654, REVISED STAT-
UTES 1889. A proceeding in conformity with section 7654, Revised
Statutes 1889, is the proper course to pursue in order to require a
county court to make a special levy for the purpose of paying out-
standing and unpaid warrants, but a proceeding under that section
does not make valid a levy in excess of the constitutional limit.
What is meant by that section is that a special levy in addition to a
general levy, when the latter does not come up to the constitutional
limit, may be made for the purpose of paying past indebtedness.

Appeal from Ray Circuit Court.—*Hon. E. J. Broaddus,*
Judge.

AFFIRMED.

*George W. Crowley* and *James L. Farris, Jr.,* for appel-
lant.

(1) The county court properly levied and assessed the
tax of twenty cents on the one hundred dollars valuation under
and pursuant to the mandate of the circuit court. R. S. 1889,
sec. 7653, as amended by Laws 1893, p. 219; R. S. 1889, sec.
7654; (2) This statute is legal and valid and is in aid of
section 12, article 10, Constitution. Andrew County ex rel.
v. Schell, 135 Mo. 38; State ex rel. v. Railroad, 130 Mo. 248;
State ex rel. v. Railroad, 86 Mo. 237; State ex rel. v. Rail-
road, 113 Mo. 299; State ex rel. v. Railroad, 97 Mo. 296;
State ex rel.v.Railroad, 92 Mo. 137; State ex rel.v.Bridge Co.,
134 Mo. 339. (3) The tax levy sought to be collected by this
suit is constitutional and is authorized by sec. 12, art. 10,
Constitution, 1875. The warrant for '93, '94, and '95, not
being in excess of the revenue provided for the current ex-
penses of such fiscal years, became a valid debt against the
county under the power given by the first clause in section 12:
"No county shall be allowed to become indebted in any manner
or for any purpose to an amount exceeding in any year the in-
come and revenue provided for such year." This clause evi-
dently grants full power to the county to contract debts not
to "exceed in any year the income and revenue provided for

such year." (4) The county can anticipate the collection of its revenue and draw warrants within the limit thereon, which warrants will be valid and binding upon the county. State ex rel. v. Payne, 151 Mo. 670; Andrew County ex rel. v. Schell, 135 Mo. 31. (5) The circuit court under the "Cottey Law" properly ordered the levy and assessment of tax to pay warrants issued for prior years and within the revenue provided for such years, respectively, but which could not be paid on account of a failure to collect revenue for the respective year or years and on account of not having surplus cash in the treasury sufficient after defraying the current expenses of the county to pay the same. A fund to pay such indebtedness can only be raised by compliance with section 7654, and in obedience to an order of the circuit court as provided thereby, directing the county court to make a levy for that "special purpose." Andrew County ex rel. v. Schell, 135 Mo. 39. (6) A tax levy to pay legal warrants issued for other years is not a tax infringing on section 11, article 10, Constitution. Such a tax may exceed the rate provided in section 11 and yet be valid. The two sections must be construed together, giving to each one equal effect and dignity. Lamar W. & E. L. Co. v. Lamar, 128 Mo. 199.

*Geo. S. Grover* for respondent.

(1) As no exceptions were saved to the order of the trial court, if made, overruling defendant's motions for new trial and in arrest of judgment, there is nothing before the court for review but the record proper. Ross v. Railroad, 141 Mo. 390. (2) The plaintiff can not maintain this action, because he is not the real party in interest. Sec. 540, et seq., R. S. 1899. (3) The taxes here sued for are void, because the levies were made for a private and not a public purpose, the real purpose of the levy being to reimburse the Ray County Savings Bank. Art. 10, sec. 3, Constitution; Cooley on Taxation (2 Ed.), p. 103; State ex rel. v. Switz-

ler, 143 Mo. 287; Simmons Medicine Co. v. Ziegenhein, 145 Mo. 368.   (4)   As these tax levies were not authorized by a vote of the people of Ray county, they are void.   Art. 10, sec. 12, Constitution; Book v. Earl, 87 Mo. 246; State ex rel. v. Douglas Co., 148 Mo. 37; State ex rel. v. Payne, 151 Mo. 663; Railroad v. Thornton, 152 Mo. 570; Springfield v. Edwards, 84 Ill. 626; Law v. People, 87 Ill. 385; Howell v. Peoria, 90 Ill. 104; Prince v. Quincy, 128 Ill. 443; Buchanan v. Litchfield, 102 U. S. 278.

BURGESS, J.—This is an action to enforce a tax lien against defendant's property in Ray county.

The tax sued for was levied by the county court of that county under and in pursuance of an order of the circuit court of said county by authority of section 7654, Revised Statutes 1889, section 9274, Revised Statutes 1899, and sections following.

The petition is in two counts, the only difference in them being that the first count is for special taxes levied for the year 1896, amounting to $876.91, penalties, commissions and attorney's fees, and the other for special taxes levied for the year 1897, amounting to $898.14, with penalties, commissions and attorney's fees.

Defendant answered alleging the law under which the levies were made, to be in violation of sections 3 and 11 of article 10 of the State Constitution, and "that the pretended taxes sued for in said count of said petition, as well as the county warrants described therein, have been assigned to and are now held by one of the banks located in Ray county, Missouri, to-wit, the Ray County Savings Bank, and that the plaintiff in this suit, as well as the county of Ray, in the State of Missouri, are not the proper parties in interest in this case, and are not the real parties in interest in this case, and that the plaintiffs herein have no interest in this controversy, as

the pretended taxes here sued for have long since been paid to them by said Ray County Savings Bank." ·

The cause was tried by the court upon an agreed statement of facts, which, leaving off the formal parts, reads as follows:

"Now come the parties in the above-entitled cause by their attorneys, and agree to submit the above cause to the court for its determination thereof, and agree that the following are the facts upon which the same is to be decided: · Pres. E. Hill is now, and at the dates mentioned in each and both of the counts of the plaintiff's petition was, the duly elected and legally qualified and acting collector of the revenue within and for Ray county; that said collector with the approval of the county court of Ray county has employed James L. Farris, Jr., to aid and assist the prosecuting attorney in conducting and managing this suit, as is provided in section 7746, Revised Statutes 1889; that defendant is a railroad corporation duly organized and existing according to law and that it now is, and at the dates mentioned in plaintiff's petition and for a long time prior thereto was, the owner of and had the control of a railroad extending from St. Louis to Kansas City, and that it has and at said dates had railroad bed and property located in and running through Ray county, Missouri, as described in plaintiff's petition; that said land and property were then and there subject to taxation for state, county, school and other purposes. That May 6, 1896, there were outstanding warrants drawn against the general revenue or contingent fund of Ray county, issued and protested prior to the first day of January, 1896, amounting to forty thousand dollars; that for the years 1892, 1893, 1894, 1895, 1896, 1897 and 1898, the assessed valuation of all property in Ray county, Missouri, was more than six million dollars and less than ten million dollars; that during all of said years there was assessed and levied for county purposes an annual rate on property in said county a tax of forty cents on the one hundred dollars valua-

tion, which levies for each of said years were duly paid by the defendant, and that the proceeds of such levies were entirely exhausted in paying the ordinary, usual and necessary expenses of the county. That the warrants above mentioned were issued and protested in the years 1893, 1894 and 1895 for services and material rendered and furnished said county that were necessary for its proper management and maintenance; that said warrants were issued within the limit of the revenues receivable for the years of their issues, respectively; that is to say, that had all of the taxes assessed and levied for those years been collected, the amount of such taxes, together with the other revenue and income actually paid into the county treasury for the benefit of the contingent fund, would have exceeded the amount of warrants issued for said years, but that the full amount of said taxes were not so collected, but a portion each year returned delinquent to such an extent that there remained at the end of each of the above fiscal years a surplus of unpaid and outstanding warrants. That on May, 6, 1896, there were no funds on hand to pay said warrants with. That on May 6, 1896, the county court of Ray county made and entered of record an order, a true copy of which is set out at pages 5 and 6 of plaintiff's petition. [This was an order requesting the prosecuting attorney of the county to apply to the circuit court for an order authorizing the county court to make a specified levy on all property in the county for the purpose of raising sufficient revenue to pay the past indebtedness of the county.] That on May 20, 1896, during the session of the regular May term of the Ray Circuit Court, James L. Farris, Jr., the then prosecuting attorney of said county, in obedience to said order, presented a petition to the said circuit court, a copy of which, with the omission of the formal parts, is set out in plaintiff's petition. And that afterwards, to-wit, on May 20, 1896, said circuit court took up said petition and statement, and after hearing the evidence and duly considering

the same, made and entered of record an order, as set forth at pages 10, 11, 12 and 13 of plaintiff's petition. [This was an order by the circuit court to the county court to levy and assess a special tax of twenty cents on the one hundred dollars valuation on all property, real, personal and mixed in Ray county for the purpose of paying past indebtedness.] That on the ―― day of May, 1896, the clerk of the Ray Circuit Court duly certified a copy of the above order to the county court of Ray county, and that on June 6, 1896, at an adjourned term of said county court, and in obedience to said order of said circuit court, the said Ray County Court levied and assessed a special tax of twenty cents on the one hundred dollars valuation on all property, real, personal and mixed, in Ray county, and that said order is in words and figures as follows, to-wit.

" 'In the Ray County Court, Tuesday, June 2, 1896.

*Adjourned Term.*

" 'In the Matter of Petition in the Circuit Court for power to assess, levy and collect a tax to pay Outstanding Warrants of legal Indebtedness of said County.

" 'In obedience to the order of said circuit court of Ray county directing the county court to levy and collect an additional tax of twenty cents on the one hundred dollars valuation, it is therefore ordered that there be and is hereby levied against all property, personal, real and mixed, within Ray county, Missouri, a tax of twenty cents on the one hundred dollars valuation based on the ownership of property June 1, 1895, and as corrected and fixed by the state and county boards of equalization; and it is further ordered that the county clerk extend said tax in a suitable column in tax book.'

"That said clerk duly extended said tax on the tax book of said year; that by virtue of the above steps taxes were extended against the above property of the defendant for the

fiscal year 1896 for the purposes as set forth in said orders, to-wit, for the purposes of paying said outstanding warrants, the sum of $876.91. And it is admitted that if the plaintiff is entitled to recover at all the amount due under the first count in said petition is $876.91 and the penalties provided by law, as well as reasonable attorney's fee as provided in section 7746, Revised Statutes 1889; and that if plaintiff is entitled to recover at all said judgment shall be as provided by statute.

"It is further admitted that on the first day of May, 1893, the county court of Ray county, selected the Ray County Savings Bank as the county depository for said county, and that the said order is as follows, to-wit:

" '*In the Ray County Court, Monday, May* 1, 1893.

" '*In the Matter of the County Depository*: ` And new at this day it appearing to the court, that in pursuance of notice duly given by the county clerk, by publication in the Richmond Conservator, and the Richmond Democrat, two newspapers published in said county, at least twenty days' prior to this date, sealed proposals were filed with said court for the deposits of said county, including the school funds, excepting the Capital School Fund; which said proposals were publicly opened by the court at noon, on the first day of May term, 1893, thereof; and in words and figures as follows, to-wit:

" ' "To the Honorable County Court of Ray County.
" ' "Richmond, Mo., May 1, 1893.
" ' "In case the court wishes the bank which becomes the depository of the county, to accept county warrants at par, the Ray County Savings Bank will give two per cent on daily balances and further agrees to buy all warrants at par issued after this date, which may be offered them. As a guarantee of good faith we enclose check for $5,000."

" ' "To the Honorable County Court of Ray County, Missouri,.

" ' "Richmond, Mo., May 1, 1893.

" ' "We the undersigned banking house of J. S. Hughes & Co., of Richmond, Mo., being desirous of bidding for the county funds, for the next ensuing two years, hereby offer, as interest on the depository of said county the sum of one-half of one per cent per annum interest. The interest on said funds to be computed as daily balances, and paid according to law. And we hereby accompany said bid with our certified check, for the sum of two hundred and seventy-five dollars according to law."

" 'And whereas the Ray County Savings Bank offered to pay to the county the largest amount for such privilege, as shown by said bid; it is therefore ordered by the court, that the said Ray County Savings Bank be and is hereby appointed as such depository for two years upon presentation of bonds, conditioned by law.'

"That afterwards said Ray County Savings Bank duly filed its bond as such depository and the bonds were approved by the court and said Ray County Savings Bank duly became such depository and acted as such for the term of two years from the first day of May, 1893, under the terms of said order and bid, and as such became the holder and owners of the warrants mentioned in plaintiff's petition by purchase from the parties to whom the same were issued. That said warrants so purchased by Ray County Savings Bank have been paid to said bank by the said Ray county from the proceeds of the special levies aforesaid for the years 1896 and 1897, except the sum of $5,500, which was paid by transferring liquor license and certain colored school deposit funds to the fund for the payment of said warrants.

"And in addition to the admission and agreements above entered into, relating to the first count of the plaintiff's petition, which it is hereby agreed may be considered in the

decision also of the second count, it is further admitted that the proceeds and taxes derivable from the levy, assessment and collection of twenty cents on the one hundred dollars valuation by order of court referred to in the first count was not sufficient to pay off all the outstanding warrants, but after the same had been collected there yet remained of said outstanding warrants the sum of about $20,000. That under and pursuant to the order of the circuit court referred to in the first count of the petition the county court of Ray county, on the —— day of May, 1897, at its regular May term, did levy and assess and direct to be collected a special tax of twenty cents on the one hundred dollars valuation for the fiscal year 1897 on all property, real, personal and mixed, in Ray county, for the purposes in said order and judgment set forth, which said levy of twenty cents was in addition to the levy of forty cents on the one hundred dollars valuation for county purposes; that by reason of such action there were taxes extended against the property above described of the defendant for the fiscal year 1897 for the purposes set forth amounting to $898.14, which sum, together with the sum mentioned in the first count, the defendant refuses to pay. And it is admitted that if plaintiff is entitled to recover anything whatever against the defendant by reason of the second count of the petition it is $898.14, and the penalty as provided by law and a reasonable attorney's fee, as provided in section 7746, Revised Statutes 1889, and that if plaintiff is entitled to judgment it shall be rendered according to statutes.

"This agreement shall constitute a part of the record in said cause and either party may appeal from the finding and judgment of this court to the Supreme Court of the State of Missouri. This tax was not levied for the purpose of erecting public buildings and was not authorized by a vote of the people of the county."

The trial resulted in a judgment for defendant, from which plaintiff appeals.

It is said by defendant that no exceptions were saved by plaintiff to the action of the court below in overruling the motions for new trial and in arrest of judgment, but this contention is not sustained by the bill of exceptions, which shows that exceptions were properly taken and saved at the time the motions were overruled, and, being matter of exception could not be preserved, and made part of the record in any other way.

It is insisted that the suit was not brought in the name of the real party in interest as required by sections 540 and 541 of the Revised Statutes 1889, and that it should have been brought in the name of the Ray County Savings Bank, the only party in interest. But this contention, is, we think, untenable, for all state and county taxes under our statute can only be sued for in the name of the State at the relation of and to the use of the collector of the county.

The vital question to be considered in this case is with respect to the validity of the levy in question. Ray county having more than six million dollars and less than ten million dollars valuation, was limited to a levy (which was made) of forty cents on the one hundred dollars, by the express terms of section 11, article 10, of the Constitution of the State, and, unless the special levy of twenty cents in addition thereto was authorized by section 12 of the same article of the Constitution, or by section 7654, Revised Statutes 1889, it must be held invalid.

In Lamar Water Company v. City of Lamar, 128 Mo. l. c. 221, it was ruled that under section 11, supra, no higher rate of taxation than therein prescribed was permissible, but that a rate might be imposed under the conditions and restrictions of section 12, supra, even though in excess of the rates stated in section 11. The court said, "The tax expressly authorized in the last lines of section 12, may be imposed in

excess of the rates named in section 11, if the other limitations in section 12 are observed," which are, the assent of two-thirds of the voters of the county voting at an election to be held for that purpose, and, that with such assent any county may be allowed to become indebted to a larger amount for the erection of a courthouse or jail.

It is not pretended, in the case at bar, that the requirements of section 12, supra, as indicated were complied with.

In Aurora Water Company v. City of Aurora, 129 Mo. 540, the ruling in the Lamar case upon the question now under consideration was approved.

The case of the Lamar Water & Electric Light Company v. City of Lamar was before this court on a second appeal (140 Mo. 145) and the rulings on the constitutional questions which were passed upon on the former appeal were adhered to by a majority of the court in banc, without further discussion of them.

Again in the recent case of State ex rel. Miller v. M., K. & T. Ry. Co., 164 Mo. 208, the same rule announced in the cases before referred to was adhered to but by a divided court.

The leading case in this State upon the power of a county court under the present Constitution to contract a debt for any purpose in excess of its revenue for the current year, is Book v. Earl, 87 Mo. 246, in which it was said: "The evident purpose of the framers of the Constitution and of the people who adopted it, was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, supra, is clear and explicit on this point. Under this section the county court might anticipate the revenue collected, and to be collected, for any given year,

and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it."

That case was subsequently followed in State ex rel. v. Payne, 151 Mo. 663, and in Railroad v. Thornton, 152 Mo. 570.

In Prince v. Quincy, 128 Ill. 443, it was said that the inhibition contained in the Constitution of Illinois "was intended to embrace indebtedness of every description, nature, and kind, and in every sense of the term, whatever the character or form by which it was evidenced, when made or issued after the limit should be reached. This leaves no possible ground for the supposed distinction between an indebtedness for current expenses and other accounts, or between one payable out of a specific fund and one chargeable against the city generally."

In Buchanan v. Litchfield, 102 U. S. 278, the Supreme Court of the United States, said: "The first and most important of the certified questions involves the construction of the twelfth section of the ninth article of the Constitution of Illinois. The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness; the purpose of its framers, beyond all question, was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount. The authority, therefore, conferred by the act of April 15, 1873, to incur indebtedness in the construction and maintenance of a system of waterworks, could have been lawfully exercised by a city, incorporated town or village, only when its liabilities, increased by any proposed new indebtedness, would be within the constitutional limit. No legislation could confer upon a municipal corporation authority to contract indebted-

ness which the Constitution expressly declared it should not be allowed to incur."

The amount of indebtedness for the payment of which the special levy was made, was easy of ascertainment, and being in excess of "the income and revenue provided for such years, by the sections of the Constitution adverted to, and, the construction placed upon them by the decisions of this court to which we have called attention, it would seem that the assent of two-thirds of the qualified voters of the county," was a condition precedent to such levies. [Barnard & Co. v. Knox County, 105 Mo. 382.]

But plaintiff contends that as it is shown by the agreed statement of facts that the warrants were issued within the limit of the revenues receivable for the years of their issue respectively; that is to say, that had all the taxes assessed and levied for those years been collected, the amount of such taxes, together with the other revenue and income actually paid into the county treasury for the benefit of the contingent fund, would have exceeded the amount of warrants issued for said years, but that the full amount of said taxes were not so collected, but a portion each year returned delinquent to such an extent that there remained at the end of each of the above fiscal years a surplus of unpaid and outstanding warrants, and that, therefore, the warrants are valid. That the warrants were valid may be conceded, but as to whether or not they can be paid otherwise than from the surplus after the revenues for any one year have been applied to payment of the current expenses of the county for that year, is another and entirely different question. Plaintiff, however, contends that this may be done, as in this case, by proceeding under section 7654, Revised Statutes 1889. That this section of the statute is not in conflict with the Constitution of the State is admitted, but its position is, that it does not, except as provided by section 12, supra, authorize the levy of a tax

upon property exceeding forty cents on the one hundred dollars for any purpose.

It was held in the cases relied upon by plaintiff, viz., State ex rel. Brown v. Mo. Pac. Ry. Co., 92 Mo. 137; State ex rel. Givens v. Wabash St. L. P. Ry. Co., 97 Mo. 296; State ex rel. Hamilton v. H. & St. Joe Ry. Co., 113 Mo. 297; State ex rel. v. St. L. K. & N. W. Ry. Co., 130 Mo. 243; State ex rel. v. Bridge Co., 134 Mo. 339, and Andrew County ex rel. v. Schell, 135 Mo. 38, that a proceeding in conformity with section 7654, supra, was the proper course to pursue in order to require a county court to make a special levy for the purpose of paying outstanding and unpaid warrants, but it was not held in any of those cases that such a levy in excess of the constitutional limit would be valid, but it seems to have been taken for granted that it would be. Now, if under such circumstances, the county court had the power to make a special levy of twenty cents on the hundred dollars valuation of property in the county in addition to the levy of forty cents, the constitutional limit, it could of course upon the same theory and by the same authority levy fifty or one hundred per cent and thus ignore those wholesome provisions of our Constitution which were intended to protect the property rights of the people, and to prevent its confiscation by an evasion of that instrument. That no such purpose was contemplated by the statute is indisputable, but what was meant thereby was that a special levy in addition to a general levy, when the latter does not come up to the constitutional limit, may be made for the purpose of paying past indebtedness of the county, provided it, including the general levy, or the levy for general purposes, does not exceed the constitutional limit.

The restrictions placed upon the taxing power by the Constitution, were conceived in wisdom, and have done much

to protect the interests of taxpayers and to advance and protect the credit of the counties throughout the State.

We see no error in the record and the judgment is affirmed.

All of this Division concur.